

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | Susan E. Cox |
|---|---|---|---|
| **CASE NUMBER** | 09 C 7074 | **DATE** | 11/15/2010 |
| **CASE TITLE** | Central States Southeast & Southwest Areas Pension Fund, et al vs. Temp Excel Properties, LLC | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion to compel [50] is granted in part.

■[ For further details see text below.]

Docketing to mail notices.
*Copy to judge/magistrate judge.

## STATEMENT

    This case involves a claim by Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, as Trustee ("the Pension Fund") to collect withdrawal liability from defendant as the successor company to Excelsior Manufacturing & Supply Company ("Excelsior"). In this motion, the Pension Fund seeks certain documents that defendant has claimed to be privileged under the attorney work-product privilege, asserting that they were prepared in anticipation of litigation. Defendant argues that it could, and did, anticipate litigation as early as June 2, 2008, when it became aware of the withdrawal liability estimate issued to Excelsior.

    To begin, a few background facts should be noted. First, the asset sale to defendant from Excelsior took place on May 1, 2008. In May and June of 2008 the Pension Fund provided to Excelsior the withdrawal liability estimate. Then in August 2008, the Pension Fund sent a notice and demand for payment of the withdrawal liability to Excelsior in the amount of $827,094.89. But it was not until January 23, 2009, that the Pension Fund filed suit against Excelsior. Several months later, in March, a judgment was entered in favor of the Pension Fund and against Excelsior. The present suit against defendant was then filed in November 2009.

    Here, both parties agree that defendant had notice that withdrawal liability potentially existed at, or near the time of, the asset sale. But the Pension Fund asserts that such knowledge does not automatically conclude that defendant would assume litigation would ensue. The Pension Fund, thus, argues that defendant cannot now argue that all documents created prior to June 2008, and possibly after, are privileged. Defendant, in contrast, claims that the Pension Fund did not have to officially threaten litigation for an anticipation of litigation to be real after June 2, 2008 for two reasons: (1) litigation was inevitable due to the large amount of money at stake, and; (2) Excelsior was in default with its credit agreement with the bank, its secured lender, so defendant knew Excelsior had no ability to pay the liability.

    The work product doctrine was designed to protect documents that involved an attorney's litigation strategy.[1] The threshold question when determining whether documents are privileged, then, is always whether the documents were "in fact prepared in anticipation of litigation."[2] The privilege, however, does not cloak all

# STATEMENT

materials that pre-date litigation simply because litigation does eventually ensue; "the privilege is not that broad."[3] Essentially, it must be shown that "the primary motivating purpose" behind the creation of a document "must be to aid in possible future litigation."[4]

Here, we have no objective facts that establish a resolve to litigate prior to June 2, 2008 and, arguably, even months thereafter. Defendant has merely shown that it was not until June 2008 that it believed the company it purchased, Excelsior, who had the original agreement with the Pension Funds, would not be able to pay off its withdrawal liability. Defendant claims that as soon as it learned of the estimate of liability, it could rightfully assume that as the asset purchaser, and as the solvent entity, the Pension Fund would pursue them for payment at some point in the future. This means, according to defendant, that the documents reflected on the privilege log would not have been prepared "but for" the anticipation of litigation because it had no business dealings with the Pension Fund - or reason to analyze its potential liability - unless there was a likelihood of litigation.

On that point, defendant refers to a New York case where the court analyzed work product privilege by asking whether the documents would have been generated in the absence of possible litigation, or, if the business was acting "solely for its 'business-related purposes.'"[5] Applying that test here, defendant claims there would be no reason for these documents to exist "but for" impending litigation with the Pension Funds.

Defendant also cites to a line of cases to support the imposition of successor liability.[6] Essentially, because of the likelihood in a withdrawal liability case like this one that it would be liable as a successor company, defendant argues that it was on notice of its "prospect of successor liability" prior to the asset sale and, therefore, knew of the likelihood of litigation early on. But we are faced with the same issue noted above, we simply have no objective facts that establish defendant was resolved to litigate this matter. We do not doubt that defendant acted diligently prior to the asset purchase of Excelsior and investigated the possibility of withdrawal liability. But the test of work product protection requires a showing that defendant prepared these documents specifically "because of the prospect of litigation."[7] It certainly could be argued here that the documents created at least prior to May 2008 were done so in the regular course of discovery of Excelsior's business, for purposes of the asset sale, rather than imminent litigation.

We should note that neither side has made a specific argument as to what particular date should start the privilege. The Pension Fund simply argues that the defendant wrongly claims that it could have anticipated litigation on or before June 2008. But the Pension Fund then also requests that all the documents in the privilege log be produced, which include documents dated as early as April 2008 and documents dated as late as December 2009, which is after the filing of this action. Similarly, defendant argues that it certainly had reason to anticipate litigation at least starting when it received the estimated withdrawal liability, which was in June 2008. Based on the information we have before us, we find that defendant has failed to articulate any basis for withholding documents created prior to at least August 17, 2008, the date the Pension Fund finally issued a demand of payment to Excelsior. Though this date is not a final certainty of litigation against either company - defendant or Excelsior - at that point it would certainly be reasonable for defendant to be preparing for possible litigation. Plaintiff's motion is, therefore, granted in part [dkt 50].

---

1. *Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1369 (N.D. Ill. 1995).

2. *Binks Mfg. Co. v. Nat'l Presto Ind., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983).

3. *Binks*, 709 F.2d at 1118.

4. *Id.*

5. *See William A. Gross Constr., Assoc., Inc. v. Am. Mfrs. Mut. Ins.*, 262 F.R.D. 354, 360 (S.D.N.Y. 2009).

6. *See Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, Inc.*, 920 F.2d 1323, 1329 (7th Cir. 1990); *see also Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986).

7. *Binks,*, 709 F.2d at 1120.